# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 5202 | **DATE** | 11/1/2001 |
| **CASE TITLE** | TRIAS MARITIME CO. LTD. OF LIBERIA vs. GREAT LAKES TOWING CO., | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Defendant Hanah Maritime Corp.'s motion for summary judgment is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | NOV 0 2 2001 |
| | Notified counsel by telephone. | date docketed |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| CG | courtroom deputy's initials | 01 NOV -1 PM 3:19 date mailed notice |
| | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION

TRIAS MARITIME CO. LTD. OF LIBERIA, )
)
                Plaintiff, )
)
         v. )    No. 97 C 5202
)    Judge Ronald A. Guzman
GREAT LAKES TOWING CO., THEODORE )
DERF, and HANNAH MARITIME CORP., )
)
                Defendants. )

## MEMORANDUM OPINION AND ORDER

Pending is defendant Hanah Maritime Corp.'s motion for summary judgment pursuant to Fed. R. Civ. P. 56. For reasons set forth below the motion is granted.

## BACKGROUND FACTS

This action is a claim involving an allision (collision) between the Greek flag going ocean vessel, the *M/V Trias*, and the Federal Marine Terminal (FMT) dock.

On July 28, 1996, the *Trias*, captained by Ilias Arachovitis, was delivering cargo to the FMT dock located along the Calumet River in Chicago, Illinois. This was the first time Captain Arachovitis had captained a vessel in the Calumet River. In order to navigate the river, the *Trias* was required to use a compulsory pilot trained in navigating vessels of this size on that waterway. Defendant Theodore Derf was the compulsory pilot on July 29, 1996 and was trained in navigating vessels the size of the *Trias* (approximately 729 feet long) on the Calumet River. In fact, Derf had piloted the Trias once before when it sailed under a different name, and had navigated the Calumet River on prior occasions.

The *Trias* arrived and laid anchor at the breakwater, outside the entrance to the Calumet

1

River, at 3:30 PM on July 28, at which point it waited until 12:30 AM on July 29 before it began its voyage up the Calumet River to the FMT dock. Two tugs, dispatched and provided by defendant Great Lakes Towing Company, were to assist in bringing the *Trias* up the Calumet River to the FMT dock.

As the compulsory pilot, Derf was in control of the conn during the navigation up the Calumet River from the moment the *Trias* got underway until it docked at the FMT dock. However, at all times Captain Arachovitis supervised the transit and was the master of the vessel. Arachovitis had ultimate authority on the vessel and, if he disagreed with something the pilot did, he could override the pilot. Additionally, if Arachovitis believed that the pilot should do something that he was not doing, he could issue orders or step in and take action. If Arachovitis felt that something was wrong with Derf's work, he had the duty to countermand any order given by the pilot.

After lines from the *Trias* were attached to the Great Lakes tugs, the ship started toward the Calumet River opening. When the ship reached the 92nd Street bridge, Pilot Derf observed vessels moored along the quay wall on the port side of the *Trias*. The vessels were later identified to be those of defendant Hannah Marine Corporation. Derf testified that he had seen tugs moored at that location on previous trips down the river, but never so many, nor protruding as far out into the navigable channel as the Hannah tugs that night. The *Trias* safely passed the moored tugs and, after clearing the tugs, began its maneuver in order to moor the *Trias* at the FMT dock.

At this point, the facts are largely in dispute. What is clear from the undisputed facts is that as the *Trias* turned to moor with the FMT dock, it had too much forward momentum, it had not adequately turned to moor with the dock, and its speed was too great. As a result, the *Trias* allided with the Federal Marine Terminal dock.

Hannah, Great Lakes Towing, and Trias Maritime Company all have different theories of precisely what caused the allision with the FMT dock. However, what is undisputed by any party

is that it was possible and reasonable for the *Trias* to dock safely with the FMT after having encountered the Hanah tugs. The issue raised by Hanah's summary judgment motion, then, is whether the Hanah tugs were, as a matter of law, a proximate cause of the allision between the *Trias* and the Federal Marine Terminal. A cursory issue implied by Trias Maritime Corporation's LR 56.1(b)(3)(B) Statement, that is whether Hanah was negligent in mooring its tugs along the river, is irrelevant to the question at hand, for if Hanah's negligence was not the proximate cause of the allision, it cannot be liable for the accident. *Exxon Co. USA v. Sofec, Inc*, 517 U.S. 830 (1996).

## DISCUSSION

The court will grant summary judgment when "there is no genuine issue as to a material fact" and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In determining whether a genuine issue of material fact exists, the court construes all facts in the light most favorable to the non-moving party and draws all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The issue raised by Hannah's summary judgment motion is whether a party can be a proximate cause of an allision where it would have been possible and reasonable to safely navigate the ship despite that party's own possible negligence. Because genuine issues of material fact clearly exist as to how exactly the allision took place, the sole question addressed by the Court is whether, given the parties' LR 56.1(a) admissions, Hanah could be the proximate cause of the accident as a matter of law.

According to the Restatement of Torts, "[a] superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." Restatement (Second) of Torts § 440. The United States Supreme Court recently settled the question of whether superceding cause applies to admiralty cases in *Exxon*, 517 U.S. at 836. In that case, the

3

negligent actions of defendant Sofec caused an oil tanker to break away from its moorings, at which point the vessel's captain engaged in a series of maneuvers to move the ship out to sea and away from shallow water. The ship was safe and in no further danger of drifting when the captain began to pilot the ship back to shore without proper navigation plots, a decision made "calmly, deliberately, and without the pressure of an imminent peril," *Id.* at 834, and one which was "grossly and extraordinarily negligent." *Id.* (citing 54 F.3d at 578). The ship eventually ran aground.

The Court held that when a party is the superceding and therefore sole cause of an injury, the injured party may not recover from "tortfeasors ... whose blameworthy actions or breaches were causes in fact of the [party's] injury." *Id.* at 840. "The doctrine of superceding cause is ... applied where the defendant's negligence in fact substantially contributed to the plaintiff's injury, but the injury was actually brought about by a later cause of independent origin that was not foreseeable." *Id.* at 837 (quoting 1 T. Schoenbaum, Admiralty and Maritime Law § 5-3, pp. 165-166 (2d ed. 1994)).

In the case at bar, a genuine issue of material fact clearly does exist at this point as to exactly which party was the "superceding and therefore sole" cause of the allision between the *Trias* and the Federal Martine Terminal dock. Trias Maritime is also correct in its assertion that there is a genuine issue of fact as to what role the Hannah tugs might have had in causing the accident. But both of those issues of fact do not go to whether, under *Exxon*, the Hannah tugs were a legal, proximate cause of the accident. The superceding cause doctrine would assume that the Hannah tugs actually were a cause in fact of the accident, and would then ask whether or not some unforeseeable action of an intervening human actor should break the chain of legal causation.

It is important to note that the superceding cause doctrine does not even ask whether the defendant is guilty of negligence *per se*, as Trias Maritime's brief suggests. In *Exxon*, there was little doubt that defendant Sofec could be guilty of negligence *per se*. 517 U.S. at 832-33.

4

Recovery was still barred by the superceding cause doctrine. Thus defendant's cited case, *e.g. Verrett v. McGonough Maritime Svc.*, 705 F.2d 1437, 1442 (5th Cir. 1993); *Eagle Trucking Co. v. Texas Bitulithic Co.*, 590 S.W.2d 200 (Tex. App. 1979), are not applicable here.

Trias Maritime next attempts to distinguish this case from *Exxon* by pointing out that superceding cause is a question of fact, and that *Exxon* and similar cases were decided through findings of fact and not on summary judgment. While this is true, in this case the parties admit that it would have been possible and reasonable for the *Trias* to have docked safely despite the presence of the Hannah tugs, even if the Hannah tugs might have made that docking more difficult. Def.'s LR 56.1(a)(3) ¶ 40. That fact can be taken as admitted and does not require resolution at trial. To be sure Derf testified the tugs' presence affected the way he manuevered the *Trias* but it is also undisputed that the channel of the Calument River between the mouth of the river and Turning Basin No. 1 was wide enough for two vessels the size of the *Trias* to physically pass each other, although whether they could do so safely was a question. (Arachovitis Dep. at 142). Obviously, the tugs are much smaller vessels than ships the size of the *Trias*. And so, if it was possible and reasonable to dock the *Trias* despite the presence of the Hannah tugs, it logically follows that the negligence of some party (or combination of parties) other than Hanah was the sole and proximate cause of the accident. That negligence was of independent origin and was not foreseeable. In this case, as in *Exxon*, while it is true that the defendant's actions may have caused a chain of events that would not have otherwise occurred, the decisions made and actions taken by human actors subsequent to that occurrence are "the superceding and therefore sole" causes of the accident.

Furthermore, in order for an action to be a proximate cause, it must be "a substantial and material factor in causing the collision." *American River Trans. Co. v. Kavo Kaliakra SS*, 148 F.3d 446, 450 (5th Cir. 1998) (quoting *Inter-Cities Navig. Corp. v. United States*, 608 F.2d 1079, 1081 (5th Cir. 1979). Trias Maritime has put forth no more than a scintilla of evidence that the Hanah tugs were a "substantial and material factor" in the accident. Finally, there is no evidence

5

that Hannah violated Waterway Rule 9(g) or was negligent per se. In fact, the only evidence offered by the opposing parties on this point are the deposition of Captain Arachovitis, who testified that the presence of the Hanah tugs made the docking "more difficult" but still possible. (Arachovitis Dep. p. 124), and the deposition of Pilot Derf, who testified that the Hanah vessels were one of the "conditions" in the allision.[1] "More difficult" does not equate with "substantial and material." In *Exxon*, the fact that the ship broke away from its berth certainly made its safe piloting more difficult, but still possible. Additionally, a prior act of negligence does not contribute if it merely creates a condition enabling the negligence of future actors, *P. Dougherty Co. v. United States*, 207 F.2d 626, 630 (3d Cir. 1952), *cert. denied*, 347 U.S. 912 (1954), as it did in this case according to Derf's testimony.

It is undisputed that but for the negligence of the human actors responsible for piloting and navigating the *Trias*, the allision would never have taken place. Whatever condition the presence of the Hanah tugs may have created, it was not enough of a condition as to reasonably affect the safe docking of the *Trias*, and therefore it cannot be "substantial and material." Whoever is legally responsible for the accident, it is not Hanah.

## CONCLUSION

For the reasons set forth above, defendant Hanah's motion for summary judgment is GRANTED.

SO ORDERED.  11/1/07        ENTERED: _____
                                     Ronald A. Guzman
                                     United States Judge

---

[1] Levin extended by one additional week, until June 22, 2001. To date, no expert has been produced.

6